CRIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

- against -

AMTRUST FINANCIAL SERVICES, INC. and
RONALD E. PIPOLY, JR.,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/31/20

20 Civ. 4652 (LLS)

OPINION & ORDER

The Securities and Exchange Commission ("SEC") brought this
action against defendants alleging violations of section 17 of
the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q,
and section 13 of the Securities Exchange Act of 1934 ("Exchange
Act"), 15 U.S.C. § 78m, for failure to disclose their process
for estimating loss reserves.  The Court approved and entered
proposed consent judgments against both defendants.  Casey
Nelson, a third party, now moves pursuant to Fed. R. Civ. P.
24(a) and (b) to intervene in this action for the limited
purpose of filing a motion for reconsideration of the judgments.
For the following reasons, the motion is denied.

## BACKGROUND

Defendant AmTrust Financial Services, Inc. ("AmTrust") is a
multinational insurance corporation that primarily conducts
business through its wholly-owned subsidiaries, which provide
workers' compensation insurance, property insurance, commercial
automobile insurance, general liability insurance, professional

-1-

and medical malpractice insurance, surety bonds, and extended
service and warranty coverage.

An insurance company's estimate of its liabilities for the
cost of unpaid claims is called management's best estimate
("MBE") of "loss reserves."  The MBE must reflect the estimated
ultimate cost of settling those claims, including claims that
have been incurred but not yet reported to the company.

As a publicly traded insurance company, AmTrust was
required to disclose its basis for estimating loss reserves and
any major risks and uncertainties concerning the estimates.

According to the SEC's complaint, AmTrust did not have a
standardized internal actuarial process to estimate loss
reserves.  Defendant Ronald Pipoly, Jr., AmTrust's former Chief
Financial Officer, reviewed the estimates of AmTrust
subsidiaries' internal actuaries, monthly claims reports,
monthly business reports, reports from external actuarial
consultants, and other ad hoc reports.  Based on that
information, Pipoly applied his own judgment and knowledge to
perform an independent analysis of AmTrust's MBE of loss
reserves.  Pipoly also calculated and recorded MBE adjustments
that generally decreased AmTrust's loss reserves and expenses.
Pipoly was the only person who understood his MBE process; no
one else at AmTrust reviewed his analyses and determinations.

The SEC alleged that AmTrust's annual Forms 10-K and

quarterly Forms 10-Q for the years 2009 through 2015 failed to disclose its process for reporting MBE.  Although AmTrust described its general actuarial process for estimating loss reserves, it failed to disclose Pipoly's methodologies, how Pipoly's process diverged from the analyses of AmTrust's internal and external actuaries, or that Pipoly's process included MBE adjustments that diverged from internal actuarial estimates.

The SEC also alleged that AmTrust failed to maintain supporting documents of Pipoly's methodologies and analyses, a sufficient system of internal accounting controls, or effective disclosure controls and procedures.

On June 17, 2020, the SEC filed this action alleging that defendants violated sections 17(a)(2) and 17(a)(3) of the Securities Act, sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act, and Rules 12b-20, 13a-1, 13a-13, and 13a-15(a) thereunder.

The SEC filed proposed consent judgments against both defendants on June 18, 2020, which the Court approved and entered on June 19, 2020.  The judgments enjoin defendants from violating sections 17(a)(2) and 17(a)(3) of the Securities Act and sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, and from filing or aiding and abetting the filing of a report with the SEC that fails to comply with section 13(a) of the

Exchange Act.  The judgments also require AmTrust to pay a civil penalty in the amount of $10,300,000 and Pipoly to pay disgorgement and a civil penalty in the amount of $237,499.

On June 23, 2020, Casey Nelson, a third party and purported whistleblower, filed a letter requesting that the Court reconsider and reject the consent judgments

> because the complaint on which they rely mischaracterizes the nature of the alleged violations, relies on a factual record that defies logic, omits important information, fails to address the substantial harm inflicted on investors as a result of the actions discussed in the complaint, and unjustly provide AmTrust the patina of legitimacy.

Dkt. No. 12 at 1.  On July 2, 2020, Nelson filed this motion to intervene for the limited purpose of filing a motion for reconsideration of the judgments.

## DISCUSSION

Nelson moves for intervention of right under Rule 24(a) or, in the alternative, permissive intervention under Rule 24(b).

### Intervention of Right

On a motion for intervention of right under Rule 24(a), "the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." Butler, Fitzgerald

& Potter v. Sequa Corp., 250 F.3d 171, 176 (2d Cir. 2001).
"Failure to satisfy any one of these requirements is a
sufficient ground to deny the application." Farmland Dairies v.
Comm'r of New York State Dep't of Agric. & Markets, 847 F.2d
1038, 1043 (2d Cir. 1988).  The SEC argues that Nelson fails to
satisfy the second, third, and fourth requirements.

A putative intervenor's interest in an action must "be
direct, substantial, and legally protectable." Washington Elec.
Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d
92, 97 (2d Cir. 1990).  "An interest that is remote from the
subject matter of the proceeding, or that is contingent upon the
occurrence of a sequence of events before it becomes colorable,
will not satisfy the rule." Id.

Nelson's interest lies in his status as a "whistleblower
who brought the allegations (as well as evidence and analysis
supporting the allegations) that underpin the complaint to the
Commission's attention." Mot. at 3.  That interest is not
direct, substantial, or legally protectable; rather, it is
contingent upon the SEC obtaining judgments against defendants,
determining that Nelson meets the requirements of whistleblower
status and is eligible for an award, and determining the amount
of any such award.  Those determinations are within the SEC's
discretion to make under the procedures and criteria described
in SEC Rules 21F-1, et seq., not for the Court.  See 17 C.F.R.

-5-

§ 240.21F-8 ("To be eligible for a whistleblower award, you must give the Commission information in the form and manner that the Commission requires."); id. § 240.21F-6 ("In exercising its discretion to determine the appropriate award percentage, the Commission may consider the following factors in relation to the unique facts and circumstances of each case, and may increase or decrease the award percentage based on its analysis of these factors."); id. § 240.21F-13:

> Section 21F of the Exchange Act (15 U.S.C. 78u-6) commits determinations of whether, to whom, and in what amount to make awards to the Commission's discretion. A determination of whether or to whom to make an award may be appealed within 30 days after the Commission issues its final decision to the United States Court of Appeals for the District of Columbia Circuit, or to the circuit where the aggrieved person resides or has his principal place of business.

See also S.E.C. v. Petro-Suisse Ltd., No. 12-CV-6221 (AJN), 2013 WL 5348595, at *3 (S.D.N.Y. Sept. 25, 2013):

> Assuming that they did invest in the Charged Offerings, they have not established a cognizable interest in this case. Unlike in cases where a would-be intervenor seeks to assert its own claims alongside the SEC's, e.g., SEC v. Everest Mgmt. Corp., 475 F.2d 1236, 1239 (2d Cir. 1972) (upholding denial of 24(a)(2) motion while stating that movants had a cognizable interest because they sought damages while the SEC sought only an injunction), the Investors seek to intervene merely in order to "assert opposition to the Consent Judgment." Investors' Mem. at 1. While investors in the Charged Offerings might stand to gain from a more favorable Consent Judgment, that is not what is at stake. A district court has the power to enter or reject such a judgment, not to alter it. See, e.g., Citigroup I, 827 F. Supp. 2d at 335 ("[T]he Court refuses to approve the proposed Consent Judgment. Instead, the Court . . . directs the parties to be ready to try this case."). Were this Court to reject the Consent Judgment, further litigation would depend on whether the SEC sought to reach a new settlement on different terms, proceeded to trial, or voluntarily dismissed its claims.

> Effectively, the interest that the Investors claim in the Charged Offerings is thus an interest not in bringing their own claims against Defendants, but in forcing the SEC to settle its own claims on new terms more favorable to the Investors. Putting aside the contingency of such an interest, an investor has no "legally protectable" right to the SEC's bringing (or continuing, or settling) an enforcement action.

To the extent that Nelson seeks to further the interests of investors and the public, the SEC adequately represents them. See S.E.C. v. Bear, Stearns & Co. Inc., No. 03-CV-2937 (WHP), 2003 WL 22000340, at *3 (S.D.N.Y. Aug. 25, 2003) ("the SEC, in its role as parens patriae, is presumed to represent the interests of the investing public aggressively and adequately. Reflexive intervention by the public in SEC actions would undermine both the SEC's ability to resolve cases by consent decree and the efficient management of those cases by courts.").

"The proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as parens patriae." United States v. City of New York, 198 F.3d 360, 367 (2d Cir. 1999).

Nelson argues that the SEC's complaint is inadequate because it mischaracterized defendants' conduct as "'disclosure violations' resulting from negligent conduct" rather than "material misstatements (i.e., violations of Section 11 of the Securities Act) made with obvious fraudulent intent (i.e., violations of Section 10b of the Exchange Act)." Mot. Ex. A. at 3-4, 11 n.22. He also argues that the complaint omits important

-7-

matters, such as the fact that AmTrust was made aware of its violations but ignored them, and that AmTrust made material misstatements about other accounting violations and failed to properly correct them.

The right to make those decisions, however, rests with the SEC. Nelson does not demonstrate that the SEC's representation was so inadequate that he should be allowed to redo the litigation after the parties have reached settlement. See City of New York, 198 F.3d at 367:

> Representation is not inadequate simply because "the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief," id., or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy, see Orange Env't Inc. v. County of Orange, 817 F. Supp. 1051, 1061 (S.D.N.Y.), aff'd, 2 F.3d 1235 (2d Cir. 1993).

See also S.E.C. v. Citigroup Glob. Markets, Inc., 752 F.3d 285, 297 (2d Cir. 2014) ("The exclusive right to choose which charges to levy against a defendant rests with the S.E.C."); id. at 296 ("The job of determining whether the proposed S.E.C. consent decree best serves the public interest, however, rests squarely with the S.E.C., and its decision merits significant deference"); S.E.C. v. Norstra Energy Inc., No. 15-CV-4751 (WHP), 2016 WL 4530893, at *1 (S.D.N.Y. Jan. 19, 2016) ("An agency's decision not to bring an enforcement action against a person or entity is 'presumed immune from judicial review.'")

(quoting Heckler v. Chaney, 470 U.S. 821, 832, 105 S. Ct. 1649,

1656 (1985)); Petro-Suisse Ltd., 2013 WL 5348595, at *4:

> Contrary to the Investors' apparent wishes, this Court cannot
> reject the Consent Judgment on the ground that the SEC should
> have brought charges with respect to additional offerings,
> cf. United States v. Microsoft Corp., 56 F.3d 1448, 1459 (D.C.
> Cir. 1995) (in an antitrust case, rejecting "district judge's
> efforts to reach beyond the complaint to evaluate claims that
> the government did not make and to inquire as to why they were
> not made" (emphasis omitted)), because doing so would intrude
> on the Executive Branch's prosecutorial discretion, see Chaney,
> 470 U.S. at 831-32; Microsoft, 56 F.3d at 1459-60. The Investors
> are unhappy that the SEC chose not to bring charges based on
> information that the Investors provided about all 55 of
> Defendants' offerings, but that was the SEC's decision, not this
> Court's.

Accordingly, Nelson's motion for intervention of right is

denied.

### Permissive Intervention

Under Rule 24(b), "the court may permit anyone to intervene

who: (A) is given a conditional right to intervene by a federal

statute; or (B) has a claim or defense that shares with the main

action a common question of law or fact." Fed. R. Civ. P.

24(b)(1). District courts have "broad discretion" when

"considering permissive intervention." AT&T Corp. v. Sprint

Corp., 407 F.3d 560, 561 (2d Cir. 2005). "In exercising its

discretion, the court must consider whether the intervention

will unduly delay or prejudice the adjudication of the original

parties' rights." Fed. R. Civ. P. 24(b)(3). "The court

considers substantially the same factors whether the claim for

intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or

'permissive' under Fed. R. Civ. P. 24(b)(2)."   R Best Produce,

Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir.

2006).

Nelson's argument that the complaint mischaracterizes the

violations and omits important information concerns common

questions of law and fact regarding defendants' conduct.

However, "permissive intervention will not be granted, even

where there is a strong commonality of fact or law, where such

intervention would cause undue delay, complexity or confusion in

a case."   Bear, Stearns, 2003 WL 22000340, at *2.   "Concerns

about undue delay and complication resulting from permissive

intervention are acute where the Government, and particularly

the SEC, is a party to the underlying action."   Id. at *3.

If permitted to intervene, Nelson would start at the

beginning, with a new complaint.   He would seek to assert

additional claims against defendants as well as other non-

parties such as AmTrust's CEO, Audit Committee members, and

auditors.   Mot. Ex. A. at 14.   He would seek disgorgement from

AmTrust of "approximately $238.2 million of ill-gotten gains."

Id. Ex. A. at 12.   He would also seek "a more fulsome

development of the factual record, including "a searching

inquiry" into Pipoly's MBE adjustments and process.   Id. at 4;

Ex. A. at 7.   He would demonstrate that AmTrust's reserves for

unpaid claims were materially misstated, artificially low to

keep profit figures higher.  On the facts, properly presented,
he would accomplish a thorough overhaul of the SEC's work over
the last seven years.

To expect that would take considerable time, effort and
expense is unavoidable.  The societal benefits of such an
undertaking have to be weighed, and the party best placed to
strike the proper balance is the SEC.

Allowing Nelson to intervene in this action after consent
judgments have already been entered would unduly delay and
prejudice the adjudication of the rights of the original parties
and the public interest in an investigation that began in 2013.
See United States v. Pitney Bowes, Inc., 25 F.3d 66, 73-74 (2d
Cir. 1994) ("given that the parties to the action had already
agreed to the terms of the consent decree, and that intervention
would require renegotiation, and delay the cleanup efforts, it
was not an abuse of discretion for the district court to deny
permissive intervention."); S.E.C. v. Canadian Javelin Ltd., 64
F.R.D. 648, 650-51 (S.D.N.Y. 1974):

> Although Sloan's claim has numerous questions of law and fact
> in common with the SEC injunction action, we think it would be
> an abuse of our discretion to permit him to intervene because
> (1) intervention would prejudice the rights of the parties and
> the public by upsetting a carefully negotiated settlement, and
> (2) Sloan's interest in participating in this action at this
> stage does not justify intervention.

Accordingly, Nelson's motion for permissive intervention is
denied.

**CONCLUSION**

Casey Nelson's motion to intervene (Dkt. No. 13) is denied.

So ordered.

Dated:    New York, New York
          July 31, 2020

                              *Louis L. Stanton*
                              LOUIS L. STANTON
                              U.S.D.J.